UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| USA,<br><br>     Plaintiff,<br><br> v.<br><br>IONEL NICULAE also known as ADRIAN DUMITRESCU,<br><br>     Defendant. | CASE NOS. 2:23-cr-00156-TL<br>       2:23-cr-00181-TL<br><br>ORDER DENYING DEFENDANT'S MOTION TO COMPEL MEDICAL TREATMENT |

This matter is before the Court on Defendant Ionel Niculae's Motion to Compel FDC to Provide Medical Care. Dkt. No. 30.[1] Having considered the relevant record, including the Government's response (Dkt. No. 31), Mr. Niculae's reply (Dkt. No. 34), and supporting

---

[1] Mr. Niculae is the Defendant in two parallel criminal actions before this Court: (1) *USA v. Dumitrescu*, Case No. CR23-156; and (2) *USA v. Niculae*, Case No. CR23-181. He filed identical motions in both cases, and the response and reply briefing is also identical. *Compare Dumitrescu*, CR23-0156, Dkt. Nos. 30, 31, 33 (sealed), 34, *with Niculae*, CR23-0181, Dkt. Nos. 21, 22, 24 (sealed), 25. The Court will therefore only include citations to the record for Case No. 23-0156 throughout this order.

ORDER DENYING DEFENDANT'S MOTION TO COMPEL MEDICAL TREATMENT - 1

documents, and finding oral argument unnecessary, *see* CrR 12(b)(12), the Court DENIES the motion.

Mr. Niculae asks for Court intervention because he believes he is receiving inadequate medical attention while in pretrial custody at the Federal Detention Center ("FDC"). Dkt. No. 30 at 1–3. Mr. Niculae has a painful abscess on his abdomen. *Id.* at 1. He first raised the issue in September 2023, when he reported it to FDC medical staff. Dkt. No. 33 at 22 (sealed). At the time, medical staff noted what appeared to be a raised skin lesion with yellowish drainage. *Id.* He was prescribed an antibiotic and ibuprofen and was provided with care instructions for treating an infection. *Id.* at 23.

A few months later, on January 5, 2024, Mr. Niculae was seen for the same issue, again proscribed antibiotics and ibuprofen, given care instructions, and told to schedule a follow-up if needed. *Id.* at 20–21. On January 24, medical staff responded to a call from an FDC officer regarding Mr. Niculae's condition. *Id.* at 17. At that visit, Mr. Niculae reported completing the second round of antibiotic treatment but noted that the lesion had worsened and was now bleeding. *Id.* He also reported an increase in the amount of pain it was causing. *Id.* Medical staff cleaned and dressed the area and prescribed a different antibiotic that he was instructed to take for ten days. *Id.* at 18. Medical staff checked in on him the following day, January 25, noting that the lesion was now draining as well. Dkt. No. 33 at 14. They provided Mr. Niculae with supplies to change the dressings as needed. Dkt. No. 33 at 14–18. They also prescribed an additional antibiotic that he was to take for ten days, after which Mr. Niculae was directed to follow-up with medical staff. Dkt. No. 33 at 18; *see also* Dkt. No. 33 at 13 (showing two antibiotics as "Active Prescriptions" beginning January 26, 2024).

In his motion, Mr. Niculae notes that his symptoms appear to be worsening. Dkt. No. 30 at 1–2. Four days after the January 25 visit, on January 29, Mr. Niculae filed a BP-9 form (*id.*

at 2; Dkt. No. 30-1 at 1–2), which is the first required step in seeking administrative relief for a complaint regarding the conditions of confinement, including the provision of medical care (*see* 28 C.F.R. § 542 *et seq.*). On the form, Mr. Niculae raised concerns that he may have a staph infection, possibly even MRSA.[2] Dkt. No. 30-1 at 2. The next day, January 30, Defense Counsel emailed the FDC on Mr. Niculae's behalf regarding his medical condition. Dkt. No. 30 at 2.

On February 14, Mr. Niculae filed this motion, noting that he had not received any additional medical treatment since the January 25 visit.[3] *Id.* at 1–3. It is unclear if Mr. Niculae attempted to schedule a follow-up visit as directed after completing the most recent ten-day course of antibiotics—which would have run through February 4, 2024—but he was seen again by medical staff on February 16, two days after filing his motion. Dkt. No. 33 at 2–9. At that visit, medical staff noted that the issue had not resolved despite the additional courses of antibiotics and raised concern about possible antibiotic resistance. *Id.* at 6. Medical staff numbed the area and took a swab for laboratory analysis. *Id.* Mr. Niculae states that no additional information or treatment had been provided at the time he filed his reply briefing on February 21, 2024 (five days after his most recent visit with medical staff when the swab was taken). Dkt. No. 34 at 1–2. However, it is unclear if Mr. Niculae's results had been received by February 21 or how much time the laboratory analysis typically takes.

---

[2] The Court takes the claim of a possible MRSA infection very seriously due to its known resistance to treatment with antibiotics, severity of potential complications, and high communicability in certain environments, such as those found in criminal detention facilities. *See, e.g.*, Mayo Clinic, *MRSA Infection*, Diseases & Conditions (Nov. 8, 2022), https://www.mayoclinic.org/diseases-conditions/mrsa/symptoms-causes/syc-20375336#risk-factors (https://perma.cc/ES9C-8A7M); *Methicillin-Resistant Staphylococcus Aureus (MRSA)*, Nat'l Inst. of Corr., https://nicic.gov/methicillin-resistant-staphylococcus-aureus-mrsa (https://perma.cc/XL3J-J5MD) (last visited Feb. 26, 2024).

[3] While Defense Counsel writes that he personally viewed Mr. Niculae's wounds, it is unclear when counsel last observed them. Dkt. No. 34 at 2.

ORDER DENYING DEFENDANT'S MOTION TO COMPEL MEDICAL TREATMENT - 3

1    Mr. Niculae specifically asks the Court to, "[a]t a minimum, [direct] the United States
2    Attorney . . . to use their best efforts to implore the FDC to expeditiously attend to Mr. Niculae's
3    medical needs and if need be refer him to an outside medical provider for treatment." *Id.* at 2.
4    The Government argues that Mr. Niculae provides no legal basis for the relief he requests and
5    notes that his criminal prosecution does not authorize the Court to assert jurisdiction over the
6    conditions of his pretrial confinement. Dkt. No. 31 at 1–3. The Government further argues that
7    the relief is unnecessary because Mr. Niculae's condition is actively being treated by FDC
8    medical staff. Dkt. No. 3–5.

9    The Court is concerned that Mr. Niculae's condition appears to have worsened over the
10   short period of time since he first reported it, but the information provided by the Parties
11   indicates that he is currently receiving medical attention for the problem. There is no evidence
12   that medical aid has been withheld or refused. As to the jurisdictional issue, Mr. Niculae's only
13   response is to note that he has constitutionally protected rights related to his conditions of
14   confinement but provides no legal authority for the specific relief requested. Dkt. No. 34 at 2.[4] It
15   also appears that Mr. Niculae has attempted to initiate the administrative processes required to
16   challenge the conditions of his confinement but has not yet exhausted those potential remedies as
17   required before seeking civil relief for constitutionally inadequate conditions. *See United States*
18   *v. Velazquez Landeros*, No. CR20-161, 2022 WL 2906418, at *1–2 (E.D. Cal. July 22, 2022)
19   (collecting cases denying constitutional relief for allegedly deficient conditions of pretrial
20   confinement by way of motion in criminal cases and noting exhaustion requirement for civil

---

[4] Mr. Niculae cites to the Eighth Amendment protections and related authorities for this proposition. Dkt. No. 34 at 2. The Ninth Circuit has held that a pretrial detainee's right to be protected from harm while in custody arises under the Fourteenth Amendment, not the Eighth Amendment. *Castro v. Cnty. of L.A.s*, 833 F.3d 1060, 1069 (9th Cir. 2016).

ORDER DENYING DEFENDANT'S MOTION TO COMPEL MEDICAL TREATMENT - 4

relief). As such, Mr. Niculae's legitimate worries and discomfort notwithstanding, his request for Court intervention appears premature.

The Court therefore DENIES Mr. Niculae's motion without prejudice. To the extent additional medically necessary care, such as a referral to an outside medical provider, is denied or withheld, a renewed motion for relief that this Court is authorized to provide[5] may be considered at a more appropriate time. To the extent Mr. Niculae believes his constitutional rights are being violated, and he exhausts his administrative remedies as required, nothing in this Order would prohibit him from filing an appropriate civil action to vindicate those rights.

Dated this 28th day of February 2024.

Tana Lin
United States District Judge

---

[5] For example, a court may direct the approval of a temporary furlough for a compelling medical reason. *See* 18 U.S.C. § 3142(i) ("[A] judicial officer may . . . permit the temporary release of [a] person[] in [] custody . . . for a[] compelling reason."); *c.f. United States v. Noland-James*, No. CR19-261, 2020 WL 1904049, at *2–4 (W.D. Wash. Apr. 17, 2020).